# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-1648

| | | |
|---|---|---|
| JOSEPH DELORY, | * | Chief Special Master Corcoran |
| Petitioner, | * | |
| v. | * | Filed: July 17, 2025 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| Respondent. | * | |

*Randall Knutson,* Knutson & Casey Law Firm, Mankato, MN, for Petitioner.

*Sara DeStefano,* U.S. Dep't of Justice, Washington, DC, for Respondent.

### ENTITLEMENT DECISION[1]

On August 2, 2021, Joseph Delory filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, et seq.[2] (the "Vaccine Act"), alleging that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine that he received on August 29, 2018. Petition (ECF No. 1) at 1.

This claim was originally assigned to the "Special Processing Unit" ("SPU") since it alleged a SIRVA (and was therefore deemed likely to settle). Respondent, however, challenged entitlement, leading to its reassignment out of SPU, and Petitioner was

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

ordered to better substantiate the claim. Now, having reviewed the record and the parties' arguments, I find that the evidence would not support *any* form of claim – Table or not – and therefore deny entitlement and dismiss the claim.

### I.  Factual Background

Petitioner had a pre-vaccination history that is significant for chronic myofascial pain, multilevel degenerative changes of the cervical spine with radiculopathy, chronic neck pain, and allergic reactions to pneumococcal vaccines, among other concerns. Ex. 2 at 1. He met with multiple specialists between 2015 and 2018 (including an orthopedist, a physical therapist, and a chiropractor) to treat his chronic pain, which he often felt in his right shoulder. *See generally* Ex. 4. At a 2015 appointment, Petitioner claimed that he had experienced ongoing pain in his right shoulder for twenty-five years. Ex. 8 at 20.

In addition, the record establishes that Petitioner had experienced a vaccine reaction in the past. In 2011, he received a Pneumovax-23 (a non-covered form of pneumococcal vaccine)[3] injection that resulted in an allergic reaction. *See* Ex. 4 at 987. Petitioner developed a "large baseball-sized area of swelling and warmth," became septic, and required a five-day hospitalization. *Id*. In 2015, Petitioner's primary care physician declined to administer Pneumovax-23 again, citing the risk of another adverse reaction. *Id*. at 988. This particular vaccine appears in every list of Petitioner's allergies in the record.

Petitioner received both the flu and Pneumovax-23 vaccines on August 29, 2018. Ex. 3 at 6–7. While the vaccination record does not clearly identify the arm into which the vaccines were administered, Petitioner asked that both be administered into his right arm, and he recounted the next day that this occurred. *Id*.; Ex. 4 at 707 ("[t]he patient notes he received 2 vaccinations yesterday in his right deltoid").

One day later, Petitioner went to the Emergency Department at the Mayo Clinic in Mankato, MN, complaining of fever, chills, pain, swelling, and generalized weakness after his vaccinations. Ex. 4 at 709. An examination determined that he had decreased range of motion in his right shoulder and cellulitis near the injection site, and Petitioner was admitted to the hospital. *Id*. at 704.

While hospitalized, multiple treating physicians proposed that Petitioner's allergy to the pneumococcal vaccine was the cause of his cellulitis. Ex. 4 at 689, 721. Petitioner received a primary diagnosis of "sepsis secondary to right arm cellulitis with likely underlying abscess." Ex. 4 at 690. He was treated with IV and oral steroids on suspicion

---

[3] The only type of pneumococcal vaccine listed on the Vaccine Injury Table is the pneumococcal *conjugate* vaccine. 42 C.F.R. § 100.3(a)(XII). Pneumovax-23, the pneumococcal *polysaccharide* vaccine, is not covered by the Program. *See, e.g.*, *Bundy v. Sec'y of Health & Human Servs.*, No. 12-769V, 2014 WL 348852, at *2 (Fed. Cl. Spec. Mstr. Jan.8, 2014); *Morrison v. Sec'y of Health & Human Servs.*, No. 04-1683V, 2005 WL 2008245, at *2 (Fed. Cl. Spec. Mstr. July 26, 2005).

of an allergic reaction, and the abscess was drained, with a treater noting that the steroids resulted in a "dramatic reduction in his swelling, erythema and tenderness." *Id*. Petitioner was discharged from the hospital on September 4, 2018 with prescriptions for antibiotics and steroids. *Id*.

Petitioner returned to the Mayo Clinic two times in September 2018 for follow-up appointments. Ex. 4 at 657–81. On September 17, 2018, Petitioner's treating physician described the cause of his hospitalization as "an unfortunate reaction to a pneumonia vaccine" and treated him for unrelated conditions. *Id*. at 680. On September 24th, at an unrelated visit for Petitioner's thoracic neck pain, Petitioner's chiropractor noted that Petitioner had been able to lift his kayak onto the roof of his car without assistance. *Id*. at 671.

Petitioner went back to the Mayo Clinic dozens of times over the next few months to be treated for a variety of issues unrelated to his alleged SIRVA. But it is not evident from the record that Petitioner sought or required much additional treatment for his shoulder issues any time past mid-fall of 2018. In fact, on October 23, 2018, a treater noted that Petitioner had seen "complete resolution" of his cellulitis, abscess, redness, and swelling. Ex. 4 at 636.

At four subsequent appointments in April, June, and July 2019, Petitioner reported that he had experienced right shoulder pain "since cellulitis" and "from the vaccination he received." Ex. 5 at 2966, 2856. On April 30, 2019, Petitioner received a steroid injection in his right arm to treat his axial neck pain. *Id*. at 2856. Multiple treating physicians noted that he had good range of motion in his right shoulder by the Spring of 2019. *Id*. On September 26, 2019, Petitioner received trigger point injections in his right arm to treat myofascial pain. *Id*. at 657. No records related to Petitioner's alleged injury were filed for the timeframe between 2019 and 2025.

## II. Procedural History

On September 11, 2023, Respondent filed his Rule 4(c) Report recommending that compensation be denied in this case and moving for dismissal. ECF No. 25. Respondent asserted that there is "another abnormality or condition that can explain petitioner's condition." *Id*. at 8. Petitioner received the Pneumovax-23 vaccine, an uncovered vaccine to which he had previously experienced a severe allergic reaction, on the same day as his flu vaccine. *Id*. Petitioner also had a long-documented history of chronic pain and cervical radiculopathy: conditions which were not limited to his right shoulder and were consistent with his more remote post-vaccination symptoms. *Id*. at 8–9. Additionally, Respondent asserted that Petitioner's injury did not meet the threshold severity requirements of the Vaccine Act because he was reported to be "completely recovered" from his injury less than two months after the vaccination. *Id*. at 10. This case was

3

removed from SPU after the filing of the 4(c) Report, and it was randomly reassigned to my non-SPU docket. ECF No. 29.

In light of the issues raised by Respondent, and after consideration of the medical record, I warned Petitioner in a January 21, 2025 status conference that a Table SIRVA claim was likely untenable. I ordered Petitioner to show cause, giving him an opportunity to respond to Respondent's objections. Particularly, I asked that he articulate and substantiate an off-Table injury and consider retaining an expert. Petitioner made a Responsive Filing on April 30, 2025, which included more recent medical records from the Mayo Clinic and a short expert report from Dr. Jack Bert. ECF No. 31 (Exs. 13, 14). Respondent objected to the relevance of these filings in his Response, arguing that the medical records of Petitioner's right shoulder MRI from March 2025 were six years removed from the vaccination and thus provided little insight into the injury. ECF No. 33 at 3. Additionally, Respondent argued that Dr. Bert's expert report simply reiterated facts relating to Petitioner's Table SIRVA claim without providing support for a causation-in-fact claim. *Id*. at 4. Respondent renewed his motion for dismissal. *Id*. at 1. Petitioner did not submit any briefs in this case.

### III.    Petitioner Cannot Establish the SIRVA Table Elements

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a Table SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs,

4

symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10). Petitioner's claim fails on three of the four Table requirements.

### a. Petitioner had a history of pain, inflammation, and dysfunction of the right shoulder

Beyond his previous vaccine-associated reaction, Petitioner had other diagnosed conditions that caused a history of pain, inflammation, and limited mobility in his right shoulder. On June 26, 2018, just two months before his vaccinations, Petitioner was reported to have "moderately advanced spinal stenosis and bilateral neural foraminal stenosis" as well as "intermittent radicular symptoms into the upper extremities," which could account for the ongoing pain in Petitioner's right shoulder. Ex. 4 at 887.

Additionally, Petitioner's treating physicians repeatedly referenced his history of cervical radiculopathy throughout the medical record, for which he sought treatment multiple times in 2015 and 2016. Ex. 4 at 153, 581, 993. In April 2015, he was specifically noted to have "R>L radicular symptoms in the C6 nerve distribution," indicating that the symptoms were prominent in his right shoulder and arm. *Id*. at 1000. In January 2016, Petitioner displayed a positive Spurling sign "especially on the right side." *Id*. at 1100. In August 2016, Petitioner described his radicular pain as radiating "from his neck down to his shoulder and even down his arm." *Id*. at 1143. This too could account for the pain and range of motion issues in Petitioner's right arm. Finally, Petitioner experienced ongoing issues related to his diabetes, and was known to experience diabetic neuropathy in his extremities. Ex. 4 at 642, 1122.

### b. Petitioner's pain was not limited to his right shoulder

Petitioner initially presented to the emergency room on August 30, 2018, complaining of generalized weakness and bilateral leg pain that began shortly after his vaccination in addition to the pain and swelling in his arm. Ex. 4 at 698. While he did experience swelling, erythema, and tenderness, Petitioner's pain was clearly not limited to his right shoulder.

### c. Other conditions or abnormalities are present to explain Petitioner's symptoms

Most detrimental to Petitioner's Table claim is the existence of another condition that would explain his symptoms: his documented allergy to the Pneumovax-23 vaccine, received at the same time as the (covered) influenza vaccine. During Petitioner's previous reaction to Pneumovax-23 in October 2011, he developed a "large baseball sized swelling with warmth," "went septic," and was hospitalized for five or six days. Ex. 4 at 987, 7. And one of Petitioner's treating physicians at the time of his 2018 hospitalization wrote: "Patient *had a similar reaction in 2011* when he received the Pneumovax 23 vaccine. He developed severe erythema and swelling involving the entire arm. According to the patient he was admitted to this hospital…" Ex. 4 at 684 (emphasis added). The reaction was so severe that, after reviewing Petitioner's medical records, his primary care provider indicated that he would not offer the vaccine to Petitioner because of the associated risks. *Id*. at 988.

Many treating physicians repeatedly connected Petitioner's symptoms to his Pneumovax-23 vaccination during his hospitalization, only incidentally mentioning the influenza vaccine. Ex. 4 at 630 ("hospitalized after he received [a] pneumonia vaccine injection"), 636 ("complete resolution of the cellulitis and associated abscess in his right upper arm from his recent pneumonia injection"), 673 ("post hospital follow-up (reaction to Pneumovax23)"), 680 ("unfortunate reaction to a pneumonia vaccine"). Even in the absence of more complete records from the 2011 reaction, the record strongly preponderates in favor of the conclusion that Petitioner's more recent injury is substantially similar, and his reported symptoms are easily attributable to the Pneumovax-23 vaccine.

Accordingly, the record preponderates in favor of the conclusion that Petitioner experienced an allergic-like reaction to a non-covered vaccine, manifesting as cellulitis. That does not constitute a SIRVA.

### IV.  Petitioner Cannot Base his Claim on a Non-Covered Vaccine

As noted above, Pneumovax-23 is not covered under the Vaccine Program. *Bundy v. Sec'y of Health & Human Servs*., No. 12-769V, 2014 WL 348852, at *2 (Fed. Cl. Spec. Mstr. Jan.8, 2014). As a result, no form of Vaccine Act claim – Table or otherwise – can arise from this vaccine's administration.

### V.  Petitioner Would Not Succeed with an Off-Table Claim[4]

---

[4] I also note that (as Respondent contends) it is questionable whether Petitioner can meet the Act's six-month "severity requirement," since it appears from the record that his arm-related concerns had been fully treated in the fall of 2018, with almost limited attention to it thereafter. However, there are some fact issues raised by this aspect of the claim (in particular the fact that Petitioner received a steroid injection in the

6

Petitioner was provided an opportunity to recast this action as an off-Table claim, based on his receipt of the flu vaccine. But Petitioner's responsive filings to my show cause order do not allege any such claim. The results of his March 26, 2025 MRI (which have little evidentiary value as the evaluation took place nearly seven years after vaccination) show that Petitioner has experienced numerous injuries to his right arm and shoulder, including bursitis, tendinosis, and partial tears of his rotator cuff tendons. Ex. 13 at 9–10. Meanwhile, Dr. Jack Bert's expert report reiterates Petitioner's original allegation that he experienced a SIRVA. Ex. 14 at 3. Petitioner has not clarified which injury or injuries he is alleging have a causal connection to the vaccination.

Assuming that Petitioner *had* specified the injury that forms the basis of his case, the claim would still fail based upon the existing record. In an off-Table claim, claimants have the burden of showing via preponderant evidence, among other things, that the vaccine at issue "did cause" the alleged injury. *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed Cir. 2005). But Petitioner's expert, Dr. Bert, does not distinguish between the two vaccinations received by Petitioner when writing about the cause of his injury, meaning his report does not lend any support to the contention that the influenza vaccine was a substantial factor in the injury.[5] Ex. 14 at 1. In fact, Dr. Bert does not specify any causal sequence to support his diagnosis of SIRVA, nor does he substantiate his claims. In his three-page report, Dr. Bert fails to provide any sort of compelling evidence for his opinion, simply writing that "there are multiple articles published regarding shoulder injuries related to vaccine administration" without citing any in particular. Ex. 14 at 3. Dr. Bert also does not address any of the aforementioned deficiencies in Petitioner's SIRVA claim, particularly the likelihood that Petitioner's Pneumovax-23 injection caused his injury.

As a result, Petitioner has not identified or offered sufficient evidence to support the conclusion the flu vaccine he received at the same time as the non-covered Pneumovax-23 vaccine *could cause* (even in part) a cellulitis reaction, or did so to him specifically, despite his demonstrated allergy to the non-covered Pneumovax-23 vaccine. And he can identify no other injury based on this record. Thus, allowing the case to proceed so that Petitioner could continue to attempt to substantiate such a claim – even after being given that chance already - would be futile given the existing medical record.

---

spring of 2018) – and in any event the claim's numerous other deficiencies are grounds enough for dismissal.

[5] Dr. Bert's expert report in fact seems to do little beyond summarizing Petitioner's medical record - and even that is deficient. For example, he recounts that Petitioner had an eight-day hospitalization, when Petitioner was discharged after fewer than six days. Ex. 14 at 1; Ex. 4 at 690.

**Conclusion**

Because Petitioner cannot on the basis of this record establish entitlement to compensation, I grant Respondent's request to dismiss the matter.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[6]

**IT IS SO ORDERED**.

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.